## THE VIGILANT.

(*District Court, E. D. New York.* February 3, 1882.)

1 TUG—LIABLE FOR LOSS OF TOW.

Where a canal-boat in tow was stranded by the negligence of the tug having her in tow, and in consequence of a depression or hole in the surface of the bar on which she was grounded a part of her bottom fell out at the receding of the tide, *held*, that the tug was liable for the damage.

*J. A. Hyland*, for libellant.

*O. B. Payne*, for respondent.

BENEDICT, D. J. This action arose out of the following circumstances: On the eleventh day of November, 1880, the steam-tug Vigilant undertook to tow the canal-boat H. G. Baker, laden with coal, up Glen Cove creek. While being so towed the canal-boat was stranded on a bar that ran along the channel in one part of the creek,

and was then left. Before she could be got off the bar her bottom broke out at a point on the port side, and she filled. This action is brought against the tug to recover the loss sustained by the owner of the canal-boat by reason of this disaster.

The first question presented is whether the stranding of the canal-boat upon the bar was caused by negligence on the part of the tug. Upon this question my conclusion is that it was so caused. It is no answer for the tug to say that the canal-boat was with difficulty kept in the channel, because the two towing hawsers were of unequal length, owing to the absence of a cleat on one side of the canal-boat. The pilot of the tug knew when he commenced to tow the canal-boat how the hawsers were fastened, and if they were so made fast as to be in fact of unequal length, he became chargeable with the duty of exercising sufficient care and skill to keep the boat in channel in spite of any difficulty created by the method in which the hawsers were made fast.

The stranding of the canal-boat being found to have been caused by negligence on the part of the tug, the next question presented by the testimony is whether the injuries sustained by the canal-boat while on the bar are to be attributed to the stranding, or to the old and rotten condition of the boat. Here the contention on the part of the tug is that the canal-boat was not injured by striking the bar; that the character of the bar was such that the boat, if seaworthy, could have lain upon it for a long time without injury; and that the breaking down of the boat's bottom was owing solely to her unseaworthy condition. On the other hand, it is contended in behalf of the canal-boat that the boat was seaworthy, and that the stranding occurred at a place where there was a depression or hole of considerable dimensions in the surface of the bar over which the boat grounded, and into which, she being loaded, a part of her bottom fell when the tide went out, because deprived at that point of any support, either of land or water. Upon this issue the burden is upon the tug. Having negligently stranded the canal-boat she must pay for the injuries sustained by the boat while so stranded, unless she can make it clear that such injuries would not have been sustained if the canal-boat had been seaworthy.

Upon the evidence there can be no doubt that the bottom of the canal-boat gave way, at a point where it was left without support, because of a hole or depression in the bar over which the boat grounded, and the evidence warrants the inference that the bottom would not have given way if it had not been for this hole. Much

conflicting testimony has been given in regard to the condition of the boat's bottom, but the weight of it, as I think, warrants the conclusion that the boat's bottom was strong enough to have supported the cargo in safety if it had not been for the existence of the hole or depression in the bar across which the boat lay. The direct evidence upon this point is confirmed by the undisputed fact that a short time before this the boat lay in safety aground at Thorne's wharf, a place, according to the claimant's witnesses, more trying to a canal-boat than the bar on which she stranded, and that on this occasion she was expecting to lie at the same wharf. My conclusion, therefore, is that the injuries sustained by the boat arose from the character of the bottom where she stranded, and not from her unseaworthy condition.

A question has been made as to the cause of the hole in the bar, and witnesses have been called in behalf of the tug who express the opinion that the depression into which the boat's bottom fell was caused by water running out of the boat when the tide went out, and washing away the soft bottom underneath. But this view rests solely upon opinion. No witness is called who says that he saw the making of the hole, nor does any witness testify that there was no such hole in the bar when the boat grounded. On the contrary, the master of the canal-boat testifies that as soon as the tug left him he felt around his boat with a pole to see what bottom he was on, and then found this hole, and at once jumped into a boat to inform his consignee that the boat would fill upon the bar; and he further testifies that when, shortly after, he returned to the boat with the consignee, the bottom had burst over the hole in the bar. In this the master is corroborated by the consignee, who, being called by the claimant, says he was there on the 11th, and saw the hole and a timber broken down over it. It does not appear to be very probable that such a hole could be made in so short a time by water running out of the boat. And, besides, there is a failure of evidence to show that there was any considerable amount of water in the boat. The opinions of the claimant's witnesses do, however, show that it is not improbable that such a hole might have been made in the bar by currents, tides, or even passing vessels, and renders credible the positive testimony of the master of the canal-boat that the hole was there when he grounded. I am unable, therefore, to find that the hole in the bar is attributable to water running out of the canal-boat.

But if the fact be that soon after the canal-boat grounded water ran out of her in sufficient quantity to make the hole in the bar where the

bottom broke down, then, inasmuch as the evidence is that there was scarcely any water in the canal-boat at the time she took the bottom, the inference follows that the water which made the hole in the bar by running out of the boat, was caused by a leak created by the stranding; and such inference is in harmony with the testimony in regard to the situation of the boat when left by the tug, as such a situation might easily cause the boat to leak. In either case the liability of the tug would be the same.

For these reasons my determination is that the libellant is entitled to a decree against the tug for the amount of the loss in question, to be determined by a reference in the usual manner.